**LANG v. UNITED STATES REDUC-
TION CO.**

No. 7031.

Circuit Court of Appeals, Seventh Circuit.
March 2, 1940.

Richard P. Tinkham, of Hammond, Ind.,
for appellant.

Edwin H. Friedrich, of Hammond, Ind.,
for appellee.

Before SPARKS, MAJOR, and KER-
NER, Circuit Judges.

KERNER, Circuit Judge.

This was an action for personal injuries
brought under the Indiana Employees' Li-
ability Act,[1] claimed to have been sustain-
ed by plaintiff Michael Lang while in the
employ of the defendant. The cause was
submitted to a jury. There was a verdict
for plaintiff upon which judgment was ren-
dered, and defendant appeals.

The cause was submitted to the jury upon
two charges of negligence. The substance
of the first charge was that in November
of 1933 plaintiff was employed by defend-
ant as a night watchman for twelve hours
per night every night in the week; that
he notified defendant that the duties im-
posed upon him were too great for his phys-
ical and mental well-being, but was direct-
ed to perform the same duties for the same
number of hours.

The second charge was that defendant
should have provided additional help to per-
form such duties, and should have reduced

---

[1] Acts 1911, c. 88, p. 145, §§ 40-1101, 40-1102 and 40-1103, Burns' 1933.

the number of hours that plaintiff was required to work; that notwithstanding such notice and knowledge defendant negligently failed to provide additional help and failed to reduce the number of hours plaintiff was required to work; that as the result of such negligence plaintiff's muscles became spastic and rigid, rendering him unable to perform any physical labor; that he suffered a severe and permanent injury to his nervous system; and that in the future he will be unable to pursue any gainful employment.

After defendant's demurrer to the complaint had been overruled, it answered, controverting the allegations of the complaint and pleading assumed risk and contributory negligence.

It appears that from 1913 to 1916 plaintiff was employed by defendant as a bricklayer. He re-entered defendant's employ in 1926 and worked until 1928. After an absence of three months he was again re-employed as a laborer. In 1933, when he was fifty-seven years of age and in good health, he was employed as a night watchman. He was told that he would be required to work twelve hours a day.

His duties were to punch a time clock at various stations at the plant. Twenty minutes were occupied in making a round of the stations and the distance travelled was almost half a mile. He made eleven rounds each night. In making a round he climbed sixty steps every hour. During the winter months he fired three boilers and throughout the year lighted up seven or eight oil furnaces. He also had other duties to perform.

Plaintiff testified, without specifying any date, that: "During the time I worked there I told Mr. Lindenberger (defendant's president) 'It is too much work.' One time he promised to give me help but I never got any man to help me."

In November of 1936 he informed defendant's superintendent that he (plaintiff) was tired and that the work was too much for him. He was told to go home and take a good rest, and when he felt better, to return to his work. Plaintiff continued at his work until February 18, 1937. He has not worked since.

It further appears that on February 19, 1937 plaintiff was examined by Dr. George M. Cook, who testified that plaintiff had a light stroke that involved the left side of his body; that plaintiff had had a brain hemorrhage; that he was of the opinion

that the type and the number of hours that plaintiff worked were a strong contributing factor to the cerebral hemorrhage, but that he found no underlying cause that would produce cerebral hemorrhage and nothing that he could lay his finger on as the cause of the hemorrhage.

A motion to instruct the jury to find defendant not guilty, tendered at the close of all the evidence, was denied by the court. On this appeal defendant has assigned numerous specifications of alleged errors. In the view we take of this case it shall be necessary only to consider its contention that the evidence is wholly insufficient to support the verdict.

It is defendant's contention that the plaintiff assumed the risks incidental to his employment.

The defense of assumed risk is ordinarily regarded as predicated upon the theory that the employee, as an element in his contract of employment, has agreed for a consideration to relieve his employer from liability for injuries, which the employee may suffer by reason of inherent or apparent hazards in the employment. Standard Steel Car Co. v. Martinecz, 66 Ind.App. 672, 689, 113 N.E. 244, 114 N.E. 94, and J. Wooley Coal Co. v. Tevault, 187 Ind. 171, 183, 118 N.E. 921, 119 N.E. 485.

The Indiana Employers' Liability Act provides that "any person, firm or corporation while engaged in business * * * and employing in such business * * * five (5) or more persons, shall be liable" as therein provided, and that one in its employ shall not "be held to have assumed the risks of the employment in any case where the violation of such employer * * of any ordinance or statute enacted, or of any rule * * * made by any public officer or commission, contributed to the injury * * *; nor shall such injured employee be held to have assumed the risk of the employment where the injury complained of resulted from his obedience to any order or direction of the employer, or of any employee to whose orders or directions he was under obligations to conform or obey." Sections 40-1101, 40-1103.

The case was tried below on the theory that the failure of the defendant to provide additional help or reduce the working hours was actionable negligence. In the consideration of the question it is well to bear in mind that there is here no statute which regulates hours or the number of employees to be furnished by an employer,

nor does our case involve a violation of any ordinance, statute or regulation enacted for the safety of employees, nor the obedience of any order of the employer or employee to whose orders plaintiff was under obligations to conform or obey. Neither is it charged that defendant provided an unsafe place of work or defective tools, implements or appliances, but the gist of the negligence charged is "creating a strain on the physique of the plaintiff."

Under such circumstances proof of negligence was prerequisite to recovery, and the defenses of assumed risk and contributory negligence were not eliminated, Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 503, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas.1915B, 475, and J. Wooley Coal Co. v. Tevault, 187 Ind. 171, 177, 178, 118 N.E. 921, 119 N.E. 485; and the rights of the parties must be determined under the common law. American Coal etc. v. Lewis, 77 Ind.App. 394, 403, 133 N.E. 846. In other words, the effect of the Act we are considering is the abolition of assumption of risk as a defense in situations in which it is applicable.

In the instant case the plaintiff knew that he alone was hired to perform the duties required of him. He admitted that he knew the work was too much for him, and it is clear that he appreciated the extent to which he would have to exert himself in the performance of his duties.

In Swift & Co. v. Rutkowski, 167 Ill. 156, 47 N.E. 362, the charge of negligence was failure to supply a sufficient number of servants. The court said at page 159 of 167 Ill., 47 N.E. at page 363: "We are not aware of any well-considered case where it has been held that the servant * * * may recover from the master upon the ground alone that the master has failed to furnish a sufficient supply of help. * * * If it was the duty of appellant to employ more help in order to render the performance of the labor appellee was employed to perform reasonably safe [and appellant failed in that duty], when that fact was discovered by appellee it was his duty to quit appellant's service; but, if he remained, he did so at his own risk."

In 18 R.C.L. § 62, p. 548, it is said: "Knowledge * * * of the peril which subsequently results in injury to the employee is the foundation of the liability of the employer. Liability exists when the perils of the employment are known to the employer but not to the employee; and no liability is incurred when the employee's knowledge equals or surpasses that of the employer."

In Louisville & N. R. Co. v. Sawyers, 169 Ky. 671, 184 S.W. 1123, in which the employee charged negligence in that he was overworked, the court adopted the language in Louisville & N. R. Co. v. Williams, 165 Ky. 386, 176 S.W. 1186, L.R.A.1915E, 613, and said, 184 S.W. at page 1124: " * * * While the servant may not always certainly know how to keep himself within the limits of safety, he is better able to judge than any one else how much heat he can safely stand, how it affects him, and when his endurance reaches a point beyond which he ought not, for his own safety, to continue at work. For these reasons it is for him, and not the master, to determine whether he shall engage in the work at all; or, if so, how energetically, and when he should rest or quit. * * * The facts therefore authorized the application of the doctrine of assumed risk, for the injuries he sustained were such as resulted from no fault of appellant * * * but from a cause or causes purely incidental to the risk he assumed by continuing the work." And continuing, said: "The only safe and practical rule is that each man is the best judge of his own physical strength and powers of endurance; that he knows better than any other can when the limit has been reached, and when, in following his own instinct of self-preservation, he must desist and exercise his right under the law to give up his work if it is more than he can stand." See also Swanson v. City of Lafayette, 134 Ind. 625, 627, 33 N.E. 1033; Roberts v. Indianapolis Street Ry. Co., 158 Ind. 634, 637, 64 N.E. 217; Lutgen v. Missouri Pac. R. Co., Mo.App., 294 S.W. 444; Kurn v. Faubus, 191 Ark. 232, 84 S.W.2d 602; Burwell v. Railway Express Agency Inc., D.C., 26 F.Supp. 26; Kansas City S. Ry. Co. v. Holder, 198 Ark. 127, 127 S.W. 2d 807 and Schweig v. Chicago M. & St. P. Co., 8 Cir., 216 F. 750, 753.

Plaintiff has cited for our consideration cases holding that failure to employ a sufficient number of men in operating a machine may constitute negligence. We believe those cases are clearly distinguishable. They are cases where the employer failed to provide adequate men to operate machinery or appliances and as a result of such failure, a dangerous instrumentality or an unsafe place to work was created and the injury occurred because of the danger in the work.

Plaintiff's counsel makes the point that under the Act[2] the defense of assumption of risk is not available to an employer in case the jury determines that the conduct of the employer was negligent.

 True it is the Act provides that all questions of assumption of risk, negligence or contributory' negligence, shall be questions of fact for the jury. Even so, § 7 of the Act is simply a restatement of the law in relation to trials,by jury as it existed prior to the enactment of the Act, Kingan & Co. v. Clements, 184 Ind. 213, 215, 110 N.E. 66, and while the court will not examine the evidence to determine its weight, it will examine the record to determine whether there is any evidence. Where the evidence is uncontradicted, it yet remains the duty of the court to decide the questions as a matter of law.

 Our case comes to this: Plaintiff is hired as a night watchman. He learns that the hours and type of work are too much for him and are affecting his health, but, knowing these facts, he continues with his labors. In our opinion, in thus continuing he assumed the risks incidental to his employment.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

[2] Acts, 1911, p. 145, § 40-1107, Burns' 1933.